1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF WASHINGTON**

| | |
|---|---|
| JOSHUA BRENT STULLER, individually and on behalf of all others similarly situated, | NO. |
| Plaintiff, | COMPLAINT FOR DAMAGES AND INJUNCTIVE AND DECLARATORY RELIEF FOR VIOLATIONS OF CIVIL RIGHTS |
| vs. | |
| CHELAN COUNTY, WASHINGTON; CATHY MULHALL, in her official capacity as Chelan County Administrator; CURT LUTZ, in his official capacity as Director of the Chelan County Regional Justice Center; CHELAN COUNTY SHERIFF'S DEPARTMENT; BRIAN BURNETT, in his official capacity as Chelan County Sheriff; LESLIE CARLSON, in her official capacity as the Chelan County Regional Justice Center Mental Health Manager, and their officers, agents, employees, and successors, | CLASS ACTION CERTIFICATION REQUESTED |
| | JURY TRIAL DEMANDED |
| Defendants. | |

COMPLAINT • Page 1

PAUKERT & TROPPMANN, PLLC
Attorneys At Law
522 W. Riverside, Suite 560
Spokane, WA 99201
Telephone (509) 232-7760

# I.  INTRODUCTION

1.1    Plaintiff brings this action on his own behalf and on behalf of other people with mental illness who have been unconstitutionally, illegally, and cruelly subjected to solitary confinement at the Chelan County Regional Justice Center (CCRJC) based on their disability, resulting in suffering and psychological harm.

1.2    Prolonged solitary confinement has long been recognized and clinically proven to be a severe form of punishment or mistreatment, even torture. The isolation is especially harmful to people with mental illness, who predictably deteriorate, suffering increased psychosis, paranoia, depression, anxiety, and self-harm.

1.3    Defendants, acting under color of state law, operate the CCRJC and implement policies, patterns, practices, and custom that routinely subject inmates with mental illness to lengthy solitary confinement and isolation without reasonable justification—essentially for no other reason than the fact that the inmate has a mental illness.  Defendants thus treat the most vulnerable inmates in a way that exacerbates their illnesses and suffering, violating constitutional and statutory law, correctional facility guidelines, and basic standards of human decency.

1.4    Defendants compound the problem by failing to provide reasonably necessary medical, mental, and behavioral treatment to Plaintiff and others similarly situated. Inmates often go without a proper medication assessment and regimen and are

COMPLAINT • Page 2

PAUKERT & TROPPMANN, PLLC
Attorneys At Law
522 W. Riverside, Suite 560
Spokane, WA 99201
Telephone (509) 232-7760

denied basic treatment, including socialization, family visits, and therapy.

1.5    Defendants' failure to exercise appropriate supervisory authority over the CCRJC and to prevent the psychological injury and deterioration of the most vulnerable in their care is plainly unlawful. The Eighth Amendment's prohibition on cruel and unusual punishment and the Fourteenth Amendment's guarantee of due process together protect individuals' right to be free from a substantial risk of serious harm while incarcerated. These protections include the right to constitutionally adequate mental health treatment and the right to be free from the unnecessary and wanton infliction of pain and suffering.

1.6    Moreover, Title II of the Americans with Disabilities Act (ADA) and Section 504 of the Rehabilitation Act prohibit the use of solitary confinement to warehouse people with mental illness and require that such individuals be provided with equal access to the programs, services, and activities offered in the CCRJC.

1.7    These federal laws prohibit the discriminatory use of force and restraints on people in response to non-violent behavior directly related to their mental illnesses and require that Defendants make reasonable modifications to their policies, practices, and procedures to avoid discrimination on the basis of disability.

1.8    Defendants' long-standing pattern and practice of neglect has directly caused serious, ongoing, and irreparable harm to Plaintiff and similarly situated

PAUKERT & TROPPMANN, PLLC
Attorneys At Law
522 W. Riverside, Suite 560
Spokane, WA 99201
Telephone (509) 232-7760

individuals. These harmful actions are in violation of the Eighth and Fourteenth Amendments to the United States Constitution, the Americans with Disabilities Act, and the Rehabilitation Act of 1973.

## II.    PARTIES

### A.    NAMED PLAINTIFF

2.1    Named Plaintiff Joshua Stuller was incarcerated in the Chelan County Regional Justice Center ("CCRJC") for thirteen months, from October 11, 2015 until November 1, 2016. He was then, and is now, a qualified individual with a disability as that term is defined in 42 U.S.C. § 12102 and 29 U.S.C. § 705(9)(B), as he has been diagnosed with schizophrenia, depression, and anxiety. Upon admission and throughout his stay at CCRJC, he experienced visual and auditory hallucinations including hearing voices, as well as delusions and flashbacks. He also experienced frightening nightmares and difficulty sleeping.

2.2    Despite clear evidence of serious mental health issues, and in the face of best practices to the contrary, CCRJC staff denied Mr. Stuller access to basic mental health treatment and improperly retained him in solitary confinement for the thirteen-month duration of his stay, causing him severe psychological and emotional suffering, exacerbating his mental health symptoms, placing him at unreasonable risk of self-harm and psychological decompensation, along with unrelieved suffering from his illness.

COMPLAINT • Page 4

**B.**    <u>**DEFENDANTS**</u>

2.3    Defendant Chelan County (the "County") is municipality chartered under the laws of Washington and is a public entity as that term is defined in 42 U.S.C. § 12131(1). The County operates and manages CCRJC and by law retains ultimate authority over and responsibility for ensuring the health, safety and welfare of Plaintiff Stuller, and the class he seeks to represent in a manner that comports with all legal obligations.

2.4    Defendant Cathy Mulhall is the Chelan County Administrator. As Chelan County's chief executive officer, she is responsible for the supervision, management, review, and evaluation of all Chelan County's administrative offices and executive departments, including the Chelan County Sheriff's Department and CCRJC. As an employee of Chelan County, she acts under color of state law. Administrator Mulhall is sued in her official capacity.

2.5    Defendant Chelan County Sheriff's Department ("Sheriff's Department") is a department of the Chelan County Executive Branch and is a public entity as that term is defined in 42 U.S.C. §12131(1). The Sheriff's Department is responsible for the day-to-day operations of CCRJC, including promulgating and enforcing CCRJC policies, procedures, and customs, as well as ensuring that the Sheriff's Department deputies at CCRJC comply with all legal obligations.

**PAUKERT & TROPPMANN, PLLC**
Attorneys At Law
522 W. Riverside, Suite 560
Spokane, WA 99201
Telephone (509) 232-7760

2.6     Defendant Brian Burnett is the Sheriff of Chelan County. He is responsible for the supervision of the Chelan County Sheriff's Department policies and the training of Sheriff's Department deputies. As an employee of Chelan County, he acts under color of state law. Sheriff Burnett is sued in his official capacity.

2.7     Defendant Curt Lutz is the Director of CCRJC. He is responsible for the supervision of CCRJC employees, the proper execution of CCRJC policies, and the lawful treatment of individuals confined to CCRJC. As an employee of Chelan County, he acts under color of state law. Director Lutz is sued in his official capacity.

2.8     Defendant Leslie Carlson is the Mental Health Manager for CCRJC. She is responsible for the leadership, oversight, and clinical direction of the Mental Health Program, ensuring compliance with governing laws and regulations, and that the Mental Health Program at CCRJC provides incarcerated persons a community standard of care and that ethical and professional standards of practice are maintained. Ms. Carlson is sued in her professional capacity.

### III.     JURISDICTION AND VENUE

3.1     This Court has jurisdiction over the claims brought under federal law pursuant to 28 U.S.C. §§1331 and 1343. Plaintiff seeks damages and declaratory and injunctive relief under 28 U.S.C. §§ 1343, 2201, and 2202, 29 U.S.C. § 794a, and 42 U.S.C. §§ 1983 and 12117(a).

COMPLAINT • Page 6

3.2     Venue is properly in this Court pursuant to 28 U.S.C. § 1391(b) because Plaintiff's and all proposed class members' claims for relief arose in this District and one or more of the Defendants reside in this District.

## IV.    FACTUAL ALLEGATIONS

### A.    Solitary Confinement Is a Form of Torture that Causes Devastating and Permanent Damage.

4.1     Solitary confinement is generally recognized as the isolated confinement of an inmate in a locked cell, where the inmate is removed from the general inmate population and deprived of meaningful contact with other people, for twenty-two to twenty-four hours per day.[1]

4.2     It is well established that solitary confinement and extended cell confinement can have devastating effects on the mental well-being of a person.[2]

4.3     Indeed, solitary confinement has been described as a form of torture by the United Nations Special Rapporteur on Torture.[3]

---

[1] *See, e.g.*, U.S. Dep't of Justice, *Report and Recommendations Concerning the Use of Restrictive Housing* p. 3 (2016), available at https://www.justice.gov/dag/file/815551/download (last accessed May 30, 2018); Nat'l Comm'n on Corr. Health Care, *Position Statement: Solitary Confinement (Isolation)* (2016), available at http://www.ncchc.org/solitary-confinement (last accessed May 30, 2018).

[2] Anna Guy, Amplifying Voices of Inmates with Disabilities Prison Project, *Locked Up and Locked Down: Segregation of Inmates with Mental Illness* 12 – 15 (2016), available at *http://avidprisonproject.org.* (last accessed May 30, 2018).

[3] Juan Méndez, Interim Report of the Special Rapporteur of the Human Rights Council on torture and other cruel, inhuman or degrading treatment or punishment, at 19-21, U.N. Doc. A/66/268 (Aug. 5, 2011), available at https://documents-dds-

COMPLAINT • Page 7

PAUKERT & TROPPMANN, PLLC
Attorneys At Law
522 W. Riverside, Suite 560
Spokane, WA 99201
Telephone (509) 232-7760

4.4    Even in adults without mental illness or other vulnerabilities, "negative health effects can occur after only a few days in solitary confinement, and the health risks rise with each additional day spent in such conditions."[4] "Research further shows that solitary confinement appears to cause 'psychotic disturbances,' a syndrome that has been described as "prison psychoses". Symptoms can include anxiety, depression, anger, cognitive disturbances, perceptual distortions, paranoia and psychosis and self-harm. [5]

4.5    The United Nations report continues:

> Some individuals experience discrete symptoms while others experience a 'severe exacerbation of a previously existing mental condition or the appearance of a mental illness where none had been observed before". Still, a significant number of individuals will experience serious health problems regardless of the specific conditions, regardless of time and place, and regardless of pre-existing personal factors.[6]

4.6    The tortuous and devastating effects of solitary confinement are even more severe when imposed upon people with mental illness. The American Psychiatric Association approved in 2012, and retained in 2017, its *Position Statement on Segregation of Prisoners with Mental Illness,* stating: "Prolonged segregation of adult inmates with serious mental illness, with rare exceptions, should be avoided due to the

---

ny.un.org/doc/UNDOC/GEN/N11/445/70/PDF/N1144570.pdf?OpenElement (last accessed May 30, 2018).
[4] *Id.,* p. 17, ¶ 62.
[5] *Id.,* p. 18, ¶ 62.
[6] *Id.,* p. 18, ¶ 63.

COMPLAINT • Page 8

potential for harm to such inmates."[7]

4.7    Even more directly, the United Nations Standard Minimum Rules for the Treatment of Prisoners (the Mandela Rules) state that "solitary confinement should be prohibited in the case of prisoners with mental or physical disabilities when their conditions would be exacerbated by such measures."[8]

4.8    For these reasons and many others, the National Commission on Correctional Health Care ("NCCHC"), one of the foremost authorities on health care in jails, forcefully opposes the imposition of isolation and solitary confinement on all prisoners, and especially on people with mental illness.    Included in its Position Statement are the following unambiguous principles:

a.    Prolonged (greater than 15 consecutive days) solitary confinement is cruel, inhumane, and degrading treatment, and harmful to an individual's health.

b.    Juveniles, mentally ill individuals, and pregnant women should be excluded from solitary confinement of any duration.

c.    Correctional health professionals should not condone or participate in cruel, inhumane, or degrading treatment of adults or juveniles in custody.

---

[7] Available at http://www.dhcs.ca.gov/services/MH/Documents/2013_04_AC_06c_APA_ps2012_PrizSeg.pdf (last accessed June 6, 2018).
[8] Available at http://www.unodc.org/documents/commissions/CCPCJ/CCPCJ_Sessions/CCPCJ_24/resolutions/L6_Rev1/ECN152015_L6Rev1_e_V1503585.pdf (Rule 45) (last accessed June 6, 2018).

COMPLAINT • Page 9

**PAUKERT & TROPPMANN, PLLC**
Attorneys At Law
522 W. Riverside, Suite 560
Spokane, WA 99201
Telephone (509) 232-7760

d.     Prolonged solitary confinement should be eliminated as a means of punishment.

e.     Solitary confinement, as an administrative method of maintaining security, should be used only as an exceptional measure when other, less restrictive options are not available, and then for the shortest time possible. Solitary confinement should never exceed 15 days. In those rare cases where longer isolation is required to protect the safety of staff and/or other inmates, more humane conditions of confinement need to be utilized.[9]

4.9     With virtually every medical, psychological, and mental health organization speaking in unison to condemn and encourage the prohibition of solitary confinement of person with mental illness, numerous federal courts have found the solitary confinement of the mentally ill to be unconstitutional. *See, e.g. Madrid v. Gomez,* 889 F. Supp. 1146, 1265-66 (N.D. Cal. 1995).

**B.     Defendants Have an Official Policy and Practice of Subjecting Inmates to Solitary Confinement Based Solely on Their Disability.**

4.10     Site visits and investigations of the CCRJC by monitoring group Disability Rights Washington has revealed that inmates with mental illness seem to generally be housed in segregation. *See* Exhibit A: *Cruel But Not Unusual, Solitary Confinement in*

---

[9] National Commission on Correctional Health Care, *Solitary Confinement*, April 10, 2016, available at https://www.ncchc.org/solitary-confinement (last accessed June 6, 2018).

COMPLAINT • Page 10

*Washington's County Jails* (2016).

4.11   This general practice of housing inmates with disabilities in segregation is implemented pursuant to CCRJC's inmate classification policy that provides that solitary confinement will be imposed upon inmates "who require segregation because of such medical conditions as communicable diseases, or such mental conditions necessitating segregation from general population (danger to self or others)."

4.12   The CCRJC Inmate Handbook provides: "You will be interviewed and classified based upon your behavior, current charge and past criminal history. You will be assigned a custody level, dressed in a corresponding colored uniform and given a housing assignment to be determined by the Objective Jail Classification deputies. Your custody level is subject to review every 60 days, and may go up or down based on your behavior and any changes in charges."

4.13   The CCRJC Inmate Handbook further provides: "Inmates who require special housing to ensure their safety, the security of the facility or the safety of other inmates in general population will be housed in Administrative Segregation. This is a level of custody into which an inmate may be classified as a result of staff determination that the inmate presents a substantial risk to the security or order of the institution or safety of the inmate or others. Inmates in this category require separation from the general population and strict supervision in a highly structured, controlled setting.

COMPLAINT • Page 11

Inmates who break the rules of the facility, are infracted, found or plead guilty will be placed in Disciplinary Segregation."

4.14   Thus, Defendants impose solitary confinement conditions upon inmates with disabilities that are substantially equivalent to the conditions imposed upon other inmates as punishment.

## C.    Defendants Fail to Provide Adequate Mental Health Care

4.15   There is no designated mental health treatment unit at CCRJC. It employs a Mental Health Manager and some cursory mental health monitoring and screening but does not provide full mental health counseling and psychiatric treatment with medication management.

4.16   Due to the lack of general mental health screening and treatment by qualified staff, Defendants use solitary confinement and suicide watch as a substitute for mental health services, even if the mentally ill inmate does not express suicidal ideation or threats of self-harm

4.17   Defendants fail to provide adequate psychiatric treatment of mental health disorders, to include psychiatric care and medication management. Treatment is provided by people who are not doctors and are not qualified to do a full psychiatric assessment and prescribe appropriate medications. Defendant Carlson reviewed Plaintiff Stuller's condition and status and noted his psychotic symptoms, but did not provide a

COMPLAINT • Page 12

PAUKERT & TROPPMANN, PLLC
Attorneys At Law
522 W. Riverside, Suite 560
Spokane, WA 99201
Telephone (509) 232-7760

plan to treat and resolve the symptoms.

4.18   Defendants refuse to provide mental health counseling to inmates until twenty-eight days prior to their release date. If a patient lacks a release date, as was the case with Mr. Stuller, no counseling is provided. Mr. Stuller's parents were forced to hire an outside mental health provider to visit Mr. Stuller in the jail on a weekly basis in order for him to receive any counseling at all. Inmates who lack these resources or supports do not receive this level of treatment.

4.19   Defendants' failure to adequately screen for mental health conditions violates well-established national standards, including those published by the NCCHC.

4.20   NCCHC's 2014 publication of "Standards for Health Services in Jails" require jails to inquire during the receiving screening into "[p]ast or current mental illness, including hospitalizations," as well as any "[h]istory of or current suicidal ideation." *See* NCCHC Standard J-E-02, p. 71 (2014) (Receiving Screening). These inquiries are designed "to ensure that patients with known illnesses and those on medications are identified for further assessment and continued treatment." *See id.*

4.21   Additionally, NCCHC standards require jails to provide a more comprehensive mental health screening *for all inmates* within 14 days of admission, including inquiries into psychiatric hospitalization, suicidal behavior and ideation, and psychotropic medications, with further referral for evaluation and treatment for

COMPLAINT • Page 13

PAUKERT & TROPPMANN, PLLC
Attorneys At Law
522 W. Riverside, Suite 560
Spokane, WA 99201
Telephone (509) 232-7760

individuals with positive mental illness screens. *See* NCCHC Standard J-E-05 (Mental Health Screening and Evaluation).

4.22    This process includes compiling and reviewing medical records from community mental health providers to create a complete mental health history and is designed to identify people with mental illness "soon after admission to prevent deterioration of their level of functioning and to [ensure that they] receive necessary treatment in a timely fashion." *See* NCCHC Standard J-E-04 (Initial Health Assessment), J-E-05.

4.23    Defying national standards, Defendants use solitary confinement as a substitute for providing actual mental health treatment services.

4.24    As a result, inmates can and do remain untreated, floridly psychotic, or otherwise symptomatic, for the entire length of their incarceration, lasting months or even years, causing immeasurable pain and suffering and risking permanent injury and death.

**D.    Plaintiff Suffered Injury as a Result of Defendants' Actions**

4.25    Josh Stuller is a person with a mental illness. He was booked into the CCRJC on October 11, 2015, due to conduct caused by a mental illness, after his family discovered delusional, paranoid, and arguably threatening writings in his bedroom. He would eventually be acquitted on all criminal charges with a finding of Not Guilty by

COMPLAINT • Page 14

PAUKERT & TROPPMANN, PLLC
Attorneys At Law
522 W. Riverside, Suite 560
Spokane, WA 99201
Telephone (509) 232-7760

Reason of Insanity.

4.26   Shortly after his arrival at CCRJC, Mental Health Manager Leslie Carlson met with Mr. Stuller. She recorded that he reported suffering from schizophrenia, depression, and anxiety and that he had been without his anti-psychotic medications for twenty-four hours.

4.27   Ms. Carlson further noted that Mr. Stuller stated that he was not suicidal or homicidal. Despite this, she stated that "it would be wise to keep him in a holding cell until we can detox and stabalize [sic] him and monitor him."

4.28   Consistent with Chelan County's standard pattern, practices, and policies, Mr. Stuller was then placed in solitary confinement and isolated, with almost no substantial contact with other persons. This occurred not because Mr. Stuller had violated rules, warranted punishment, or posed a danger. There is no indication that Plaintiff Stuller posed a danger to himself or others that necessitated segregation from general population. In fact, he stated in his first encounter with Ms. Carlson that he was not suicidal or homicidal.

4.29   Rather, he was placed in solitary confinement for the explicit reason that he suffered from a disability—with the likely result that his condition would be worsened by such confinement.

4.30   Because Mr. Stuller did not have a release date assigned upon admission,

COMPLAINT • Page 15

PAUKERT & TROPPMANN, PLLC
Attorneys At Law
522 W. Riverside, Suite 560
Spokane, WA 99201
Telephone (509) 232-7760

Defendants did not provide him with any mental health counseling. His parents hired a private mental health provider to visit him once a week for 30-60 minutes.

4.31   When Mr. Stuller was permitted to visit with his counselor or other visitors, he was regularly required to remain in a locked cage while speaking with them, preventing actual human contact.

4.32   For four months, Mr. Stuller was not even provided basic hygiene like haircuts or the ability to shave.

4.33   Plaintiff Stuller did not receive a review of his custody level during thirteen months in isolation at CCRJC.

4.34   Mr. Stuller remained in solitary confinement until he was eventually released from CCRJC thirteen months later, on November 1, 2016.

4.35   Solitary confinement caused Mr. Stuller severe mental anguish and suffering and exacerbated his mental health symptoms. Throughout Mr. Stuller's thirteen-month stay at CCRJC, Ms. Carlson and others documented his very poor and worsening mental condition, to include auditory hallucinations that were eventually joined by visual hallucinations as the months passed.

4.36   Defendants observed and were well aware of the suffering caused by unnecessary and unwarranted isolation but minimized it as simple boredom. For instance, On November 17, 2015, Ms. Carlson noted that "he is doing fine/just tired of

COMPLAINT • Page 16

PAUKERT & TROPPMANN, PLLC
Attorneys At Law
522 W. Riverside, Suite 560
Spokane, WA 99201
Telephone (509) 232-7760

being cooped up all day" and on December 16, 2015, noted that "other than being bored and cooped up he is doing pretty well."

4.37   Rather than respond appropriately and legally to Mr. Stuller's medical condition and disability, Defendants isolated him further. He was denied visits from his family (one of the rare times he had any social interaction with anyone) a total of forty-eight times, with reasons such as a malfunctioning elevator, the local Apple Blossom Festival, being understaffed, or for no reason at all.

4.38   Defendants failed to adequately treat Mr. Stuller's symptoms with medication and/or therapy. Defendants gave him injections of anti-psychotic drug Invega, which reduced somewhat but failed to control psychotic symptoms. Defendants did not try different medications to adequately treat his symptoms. In March of 2016, the jail ran out of Invega but did not provide an alternative medication, instead choosing to leave Mr. Stuller unmedicated and allowing his hallucinations to return unchecked. On March 22, 2016, Ms. Carlson noted that Plaintiff Stuller had visual and auditory hallucinations: "big hairy spiders and cockroaches are what he sees . . . the voices are louder and meaner now causing him more anxiety."

4.39   On May 11, 2016, Plaintiff Stuller was moved to a new isolation room, where he remained until his release on November 1, 2016.

4.40   Upon his release from CCRJC, Plaintiff Stuller entered court-ordered

COMPLAINT • Page 17

inpatient treatment at Eastern State Hospital. Proving that Mr. Stuller's condition could have been treated at CCRJC, he promptly responded to appropriate treatment at the hospital, experienced full remission of his symptoms, and was successfully released into the community well in advance of his final commitment date. Mr. Stuller's thirteen-month ordeal of isolation and untreated mental illness was completely unnecessary and preventable.

4.41    The lack of mental health treatment and deleterious solitary confinement conditions caused Plaintiff Stuller to suffer from unabated and worsening symptoms of his mental illness, which were not relieved until he was released from CCRJC and received treatment at Eastern State Hospital.

4.42    Defendants also caused Plaintiff Stuller severe emotional and psychological damage and distress throughout his imprisonment, as well as similar damage and distress that is ongoing and possibly permanent.

4.43    The harm suffered by Plaintiff Stuller is representative of that experienced by the proposed class.

## V.    CLASS ACTION ALLEGATIONS

5.1    Plaintiff Stuller brings this action on his own behalf and on behalf of all others similarly situated, pursuant to Fed. R. Civ. P. 23(a) and 23(b)(2), (3).  Plaintiff provisionally proposes the following class definition: Individuals incarcerated in the

COMPLAINT • Page 18

**PAUKERT & TROPPMANN, PLLC**
Attorneys At Law
522 W. Riverside, Suite 560
Spokane, WA 99201
Telephone (509) 232-7760

Chelan County Regional Justice Center, from three years prior to the filing of this action through the date this matter is resolved, who were placed in Administrative Segregation based on a determination that they had a mental illness.

5.2     The proposed class is sufficiently numerous that joinder of all members of the class is impracticable. The exact size of the class is unknown but it is estimated to number in the dozens or even the hundreds. On Tuesday, May 29, 2018, there were 244 individuals incarcerated in CCRJC, according to the Chelan County website.[10] The Federal Bureau of Justice Statistics reports that approximately sixty-four percent of incarcerated individuals have a mental health issue,[11] while one in four jailed individuals meet criteria for "serious psychological distress."[12] Disability Rights Washington noted, after a visit to CCRJC on March 7, 2018, that "inmates with mental illness seem to generally be housed in segregation." By these criteria, there are likely to be between 61 and 156 inmates with varying degrees of mental health issues in CCRJC on any given day, and many, if not most, are likely to be housed in segregation due solely to their

---

[10] *See Jail Registry*, CCRJC Home Page, Jail Population for May 29, 2018, available at http://co.chelan.wa.us/regional-jail/inmate-list?parent=Jail%20Registry (last accessed May 29, 2018).
[11] *See* U.S. Dep't of Justice, Bureau of Justice Statistics, *Special Report: Mental Health Problems of Prison and Jail Inmates* (rev. Dec. 14, 2006), available at https://www.bjs.gov/content/pub/pdf/mhppji.pdf (last accessed May 29, 2018).
[12] *See* U.S. Dep't of Justice, Bureau of Justice Statistics, *Indicators of Mental Health Problems Reported by Prisoners and Jail Inmates*, 2011-12 (June, 2017), available at https://www.bjs.gov/content/pub/pdf/imhprpji1112.pdf?utm_source=newsfrombjs&utm_medium (last accessed May 29, 2018).

COMPLAINT • Page 19

PAUKERT & TROPPMANN, PLLC
Attorneys At Law
522 W. Riverside, Suite 560
Spokane, WA 99201
Telephone (509) 232-7760

mental health status.

5.3    There are questions of law and fact common to the class, including whether the Defendants' implementation of standard policies and practices violate Plaintiff's and other class members' Eighth Amendment rights against cruel and unusual punishment, due process rights under the Fifth and the Fourteenth Amendments of the U.S. Constitution, the Americans with Disabilities Act, and the Rehabilitation Act.

5.4    The claims of Plaintiff Stuller are typical of the claims of the members of the proposed class. Plaintiff Stuller and all other members of the class have sustained similar injuries—placement in solitary confinement—arising out of and caused by Defendants' policies, practices, procedures and customs in violation of the law as alleged.

5.5    Plaintiff Stuller is a member of the class and will fairly and adequately represent and protect the interests of the class.

5.6    Plaintiff Stuller's counsel are experienced in class action and prisoners' rights litigation and will fairly and adequately represent and protect the interests of the class.

5.7    Because Defendants have acted and refused to act on grounds that apply generally to the class, monetary, injunctive, and declaratory relief is appropriate respecting the class as a whole.

COMPLAINT • Page 20

PAUKERT & TROPPMANN, PLLC
Attorneys At Law
522 W. Riverside, Suite 560
Spokane, WA 99201
Telephone (509) 232-7760

# VI.   CAUSES OF ACTION

## COUNT ONE

**Violation of The Eighth Amendment to The U.S. Constitution (42 U.S.C. § 1983)**

6.1    Defendants' placement of Plaintiff Stuller and proposed class members in indefinite solitary confinement due solely to their mental illness is the policy, practice and custom of CCJRC.

6.2    Defendants' placement of Plaintiff Stuller and proposed class members in indefinite solitary confinement due solely to their mental illness is done under color of state law.

6.3    By placing and retaining Plaintiff Stuller and proposed class members in solitary confinement, Defendants deprived Plaintiff Stuller and continue to deprive class members of basic human needs, including but not limited to routine social interaction, environmental and sensory stimulation, regular physical exercise, sleep and other essential activities.

6.4    By placing and retaining Plaintiff Stuller and proposed class members in solitary confinement, Defendants have created an unreasonable risk of serious harm to the psychological and physical health and safety of Plaintiff Stuller and class members and have in fact caused harm to said psychological and physical health and safety of Plaintiff Stuller and class members.

COMPLAINT • Page 21

6.5    By placing and retaining Plaintiff Stuller and proposed class members in solitary confinement, Defendants have acted, and continue to act, with deliberate indifference to the psychological and physical harm that such confinement threatens to inflict, has inflicted, and currently inflicts, on Plaintiff Stuller and class members.

6.6    Defendants' policy, practice and custom of solitary confinement for people with mental illness, such as Plaintiff Stuller and class members, together with Defendants' deliberate indifference to the significant psychological and physical harm that their policy has inflicted, currently inflicts and threatens to inflict on Plaintiff Stuller and proposed class members, violates the prohibition on cruel and unusual punishment guaranteed by the Eighth and Fourteenth Amendments to the Constitution.

WHEREFORE, Plaintiff Stuller and the class he seeks to represent request relief as outlined below.

## COUNT TWO

### Violation of The Fourteenth Amendment to The U.S. Constitution
### (42 U.S.C. § 1983)

6.7    Defendants' placement of Plaintiff Stuller and proposed class members in indefinite solitary confinement due solely to their mental illness is the policy, practice and custom of CCJRC.

6.8    Defendants' placement of Plaintiff Stuller and proposed class members in solitary confinement due solely to their mental illness is done under color of state law.

COMPLAINT • Page 22

6.9     When compared to the conditions of confinement for CCRJC inmates who are not mentally ill, the conditions experienced by mentally ill inmates such as Plaintiff Stuller are atypical and significantly more severe.

6.10    Defendants did not afford Plaintiff Stuller and proposed class members any opportunity to exit solitary confinement, such as periodic administrative review of their classification or treatment designed to establish their fitness to live in less restrictive housing.

6.11    Inmates in Administrative or Disciplinary Segregation at CCRJC who do not suffer from mental illness have opportunities per CCRJC policy to have their housing classification reviewed and improved.

6.12    Because Defendants follow policies, practices and customs of imposing an atypical and significant hardship on mentally ill inmates such as Plaintiff Stuller and members of the proposed class, and because Defendants denied Plaintiff Stuller and continue to deny class members the opportunities that other inmates have for review and improvement of their restrictive housing, Defendants have deprived Plaintiff Stuller and continue to deprive class members of a protected liberty interest without due process of law, in violation of the Fourteenth Amendment to the United States Constitution.

WHEREFORE, Plaintiff Stuller and the class he seeks to represent request relief as outlined below.

PAUKERT & TROPPMANN, PLLC
Attorneys At Law
522 W. Riverside, Suite 560
Spokane, WA 99201
Telephone (509) 232-7760

## COUNT THREE

### Violation of The Americans with Disabilities Act (42 U.S.C. § 12132 et seq.)

6.13   Under the Americans with Disabilities Act, "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132.

6.14   Defendants Chelan County, CCRJC and Chelan County Sheriff's Department are public entities as defined in 42 U.S.C. §12131(1)(A).

6.15   Plaintiffs are qualified individuals with a disability, as that term is defined in 42 U.S.C. §12102(2). They all suffer from a mental impairment that substantially limits one or more "major life activities," including, *inter alia,* caring for oneself, eating, sleeping, speaking, learning, reading, concentrating, thinking, communicating, and working. *See* 42 U.S.C. §12102(2)(A).

6.16   The programs, services, and activities that Defendants Chelan County and the Sheriff's Department provide to individuals incarcerated at CCRJC include, *inter alia*, mail and telephone services, in-person visitation, hygiene activities, outdoor exercise, administrative, disciplinary, and classification proceedings, the "kite" and grievance systems, library services, access to reading materials, commissary services, and educational, vocational, religious, recreational, and other programming.

COMPLAINT • Page 24

PAUKERT & TROPPMANN, PLLC
Attorneys At Law
522 W. Riverside, Suite 560
Spokane, WA 99201
Telephone (509) 232-7760

6.17   Defendants Chelan County and the Sheriff's Department discriminate against, unjustly segregate, and fail to make reasonable modifications to policies, practices, and procedures for Plaintiff Stuller and the class he seeks to represent. As a result, Plaintiff Stuller and members of the proposed class were or are excluded from participation in and denied the benefits of CCRJC's services, programs, and activities by their housing in solitary confinement solely on the basis of their mental health disability.

WHEREFORE, Plaintiff Stuller and the class he seeks to represent request relief as outlined below.

## COUNT FOUR

### Violation of the Rehabilitation Act (29 U.S.C. § 794)

6.18   Under Section 504 of the Rehabilitation Act, "[n]o otherwise qualified individual with a disability in the United States . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." *See* 29 U.S.C. § 794(a).

6.19   At all relevant times, Defendants Chelan County and the Chelan County Sheriff's Department received Federal financial assistance as that term is used in 29 U.S.C. § 794, including receiving funding under the U.S. Department of Justice's State

COMPLAINT • Page 25

PAUKERT & TROPPMANN, PLLC
Attorneys At Law
522 W. Riverside, Suite 560
Spokane, WA 99201
Telephone (509) 232-7760

Criminal Alien Assistance Program (SCRAAP).

6.20   All of the operations of Defendants Chelan County and the Chelan County Sheriff's Department qualify as "programs or activities," as those terms are defined in 29 U.S.C. § 794(b). This includes all operations of CCRJC.

6.21   Plaintiffs and the class they seek to represent are qualified individuals with disabilities as that term is defined in 29 U.S.C. § 705(20) and 42 U.S.C. § 12102.

6.22   By their polices, practices, and procedures, Defendants Chelan County and Chelan County Sheriff's Department violated the rights of Plaintiff Stuller and continues to violate the rights of the class he seeks to represent under the Rehabilitation Act by discriminating against them and excluding them from, and denying them the benefits of, the operations of the Chelan County Jail.

WHEREFORE, Plaintiff Stuller and the class he seeks to represent request relief as outlined below.

## VII.   PRAYER FOR RELIEF

WHEREFORE, Plaintiffs request that this Court:

A.   Issue an order certifying the class;

B.   Issue judgment in favor of Plaintiff Stuller and the class, and against Defendants;

C.   Issue a declaratory judgment that the conduct, conditions, and treatment

COMPLAINT • Page 26

PAUKERT & TROPPMANN, PLLC
Attorneys At Law
522 W. Riverside, Suite 560
Spokane, WA 99201
Telephone (509) 232-7760

1  described in this Complaint violate Plaintiff's and class members' constitutional and

2  statutory rights in the manner identified in this Complaint.

3      D.    Issue a permanent injunction restraining Defendants from violating the

4  Eighth and Fourteenth Amendments, the Rehabilitation Act and the Americans with

5

6  Disabilities Act in the housing and provision of care in the CCRJC.

7      E.    Issue an order retaining jurisdiction over this case to ensure Defendants'

8  full compliance with the foregoing injunction;

9

10     F.    Award all legally recoverable damages to Plaintiff Stuller and the class in

11  an amount to be shown at trial.

12     G.    Issue an award for Plaintiff's costs, litigation expenses, and reasonable

13  attorney's fees pursuant to 42 U.S.C. § 1988 and 42 U.S.C. § 12205.

14

15     H.    Such other and further relief as this Court may deem just and equitable.

16

17     DATED June 7, 2018.

18                               **PAUKERT & TROPPMANN, PLLC**

19                               By */s/ Andrew S. Biviano, WSBA #38086*
                                 ANDREW S. BIVIANO, WSBA #38086
20

21                               By: */s/ Breean L. Beggs, WSBA #20795*
                                 BREEAN L. BEGGS, WSBA #20795
22

23                               By: */s/ Mary Elizabeth Dillon, WSBA #50727*
                                 MARY ELIZABETH DILLON, WSBA #50727
24

25                               Attorneys for Plaintiff

PAUKERT & TROPPMANN, PLLC
Attorneys At Law
522 W. Riverside, Suite 560
Spokane, WA 99201
Telephone (509) 232-7760