1

**JUDGE ROSANNA MALOUF PETERSON**

2

3

Andrew S. Biviano, WSBA #38086
Breean L. Beggs, WSBA #20795
Mary Elizabeth Dillon, WSBA #50727
PAUKERT & TROPPMANN, PLLC
522 W. Riverside Ave, Suite 560
Spokane, WA 99201
509-232-6670

4

5

6

7

8

Toby J. Marshall, WSBA #32726
TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington 98103
(206) 816-6603

9

10

11

12

**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON**

13

14

JOSHUA BRENT STULLER,

15

                    Plaintiff,

16

            vs.

17

CHELAN COUNTY, WASHINGTON;
BILL LARSEN, in his official capacity
as Interim Director of the Chelan
County Regional Justice Center;
LESLIE CARLSON, in her official
capacity as the Chelan County Regional
Justice Center Mental Health Manager;
and their officers, agents, employees,
and successors,

18

19

20

21

22

23

                    Defendants.

24

NO. 2:18-CV-178-RMP

SECOND AMENDED COMPLAINT
FOR DAMAGES AND INJUNCTIVE
AND DECLARATORY RELIEF FOR
VIOLATIONS OF CIVIL RIGHTS

JURY TRIAL DEMANDED

25

SECOND AMENDED COMPLAINT • NO. 2:18-CV-178
• Page 1

# I.  INTRODUCTION

1.1    Plaintiff brings this action to stop the Chelan County Regional Justice Center (CCRJC) from unconstitutionally, illegally, and cruelly subjecting inmates with disabilities to solitary confinement, resulting in suffering and psychological harm.

1.2    Prolonged solitary confinement has long been recognized and proven to be a severe form of punishment or mistreatment, even torture. The isolation is especially harmful to people with mental illness, who predictably deteriorate, suffering increased psychosis, paranoia, depression, anxiety, and self-harm.

1.3    Defendants, acting under color of state law, operate the CCRJC and implement policies, patterns, practices, and custom that routinely subject inmates with medical, mental, or behavioral health problems to lengthy solitary confinement and isolation without reasonable justification. While they may offer pretextual reasons such as security or medical concerns, these concerns could be adequately addressed in other ways. In fact, the solitary confinement is imposed for no other reason than the inmates' disability.  Defendants thus treat the most vulnerable inmates in a way that exacerbates their illnesses and suffering, violating constitutional and statutory law, correctional facility guidelines, and basic standards of human decency.

1.4    Defendants compound the problem by failing to provide reasonably necessary medical, mental, substance abuse, and behavioral treatment to Plaintiff and

PAUKERT & TROPPMANN, PLLC
Attorneys At Law
522 W. Riverside, Suite 560
Spokane, WA 99201
Telephone (509) 232-7760

other inmates with disabilities. Inmates may go without a proper medication assessment and regimen and basic treatment, including socialization, family visits, and therapy.

1.5    Defendants' failure to exercise appropriate supervisory authority over the CCRJC and to prevent the psychological injury and deterioration of the most vulnerable in their care is plainly unlawful. The Eighth Amendment's prohibition on cruel and unusual punishment and the Fourteenth Amendment's guarantee of due process together protect individuals' right to be free from a substantial risk of serious harm while incarcerated. These protections include the right to constitutionally adequate mental health treatment and the right to be free from the unnecessary and wanton infliction of pain and suffering.

1.6    Moreover, Title II of the Americans with Disabilities Act (ADA) and Section 504 of the Rehabilitation Act prohibit the use of solitary confinement to warehouse people with disabilities and require that such individuals be provided with equal access to the programs, services, and activities offered in the CCRJC.

1.7    These federal laws prohibit the discriminatory use of force and restraints on people in response to non-violent behavior directly related to their disabilities and require that Defendants make reasonable modifications to their policies, practices, and procedures to avoid discrimination on the basis of disability.

1.8    Defendants' long-standing pattern and practice of neglect has directly

SECOND AMENDED COMPLAINT • NO. 2:18-CV-178
• Page 3

PAUKERT & TROPPMANN, PLLC
Attorneys At Law
522 W. Riverside, Suite 560
Spokane, WA 99201
Telephone (509) 232-7760

caused serious, ongoing, and irreparable harm to Plaintiff and others. These harmful actions are in violation of the Eighth and Fourteenth Amendments to the United States Constitution, the Americans with Disabilities Act, and the Rehabilitation Act of 1973.

## II. PARTIES

### A.    <u>PLAINTIFF</u>

2.1    Plaintiff Joshua Stuller was incarcerated in the Chelan County Regional Justice Center ("CCRJC") for thirteen months, from October 11, 2015 until November 1, 2016. He was then, and is now, a qualified individual with a disability as that term is defined in 42 U.S.C. § 12102 and 29 U.S.C. § 705(9)(B), as he has been diagnosed with schizophrenia, depression, and anxiety. Upon admission and throughout his stay at CCRJC, he experienced visual and auditory hallucinations including hearing voices, as well as delusions and flashbacks. He also experienced frightening nightmares and difficulty sleeping.

2.2    Despite clear evidence of serious mental health issues, and in the face of best practices to the contrary, CCRJC staff denied Mr. Stuller access to basic mental health treatment and improperly retained him in solitary confinement for the thirteen-month duration of his stay, causing him severe psychological and emotional suffering, exacerbating his mental health symptoms, placing him at unreasonable risk of self-harm and psychological decompensation, along with unrelieved suffering from his illness.

PAUKERT & TROPPMANN, PLLC
Attorneys At Law
522 W. Riverside, Suite 560
Spokane, WA 99201
Telephone (509) 232-7760

**B.    DEFENDANTS**

2.3    Defendant Chelan County (the "County") is municipality chartered under the laws of Washington and is a public entity as that term is defined in 42 U.S.C. § 12131(1). The County operates and manages CCRJC and by law retains ultimate authority over and responsibility for ensuring the health, safety and welfare of Plaintiff Stuller and other inmates in a manner that comports with all legal obligations.

2.4    Defendant Bill Larsen is the Interim Director of CCRJC. He is responsible for the supervision of CCRJC employees, the proper execution of CCRJC policies, and the lawful treatment of individuals confined to CCRJC. As an employee of Chelan County, he acts under color of state law. Director Larsen is sued in his official capacity.

2.5    Defendant Leslie Carlson is the Mental Health Manager for CCRJC. She is responsible for the leadership, oversight, and clinical direction of the Mental Health Program, ensuring compliance with governing laws and regulations, and that the Mental Health Program at CCRJC provides incarcerated persons a community standard of care and that ethical and professional standards of practice are maintained. Ms. Carlson is sued in her professional capacity.

## III.    JURISDICTION AND VENUE

3.1    This Court has jurisdiction over the claims brought under federal law pursuant to 28 U.S.C. §§1331 and 1343. Plaintiff seeks damages and declaratory and

PAUKERT & TROPPMANN, PLLC
Attorneys At Law
522 W. Riverside, Suite 560
Spokane, WA 99201
Telephone (509) 232-7760

injunctive relief under 28 U.S.C. §§ 1343, 2201, and 2202, 29 U.S.C. § 794a, and 42 U.S.C. §§ 1983 and 12117(a).

3.2    Venue is properly in this Court pursuant to 28 U.S.C. § 1391(b) because Plaintiff's claims for relief arose in this District and one or more of the Defendants reside in this District.

## IV.    FACTUAL ALLEGATIONS

### A.    Solitary Confinement Is a Form of Torture that Causes Devastating and Permanent Damage.

4.1    Solitary confinement is generally recognized as the isolated confinement of an inmate in a locked cell, where the inmate is removed from the general inmate population and deprived of meaningful contact with other people, for twenty-two to twenty-four hours per day.[1]

4.2    It is well established that solitary confinement and extended cell confinement can have devastating effects on the mental well-being of a person.[2]

4.3    Indeed, solitary confinement has been described as a form of torture by the

---

[1] *See, e.g.*, U.S. Dep't of Justice, *Report and Recommendations Concerning the Use of Restrictive Housing* p. 3 (2016), available at https://www.justice.gov/dag/file/815551/download (last accessed May 30, 2018); Nat'l Comm'n on Corr. Health Care, *Position Statement: Solitary Confinement (Isolation)* (2016), available at http://www.ncchc.org/solitary-confinement (last accessed May 30, 2018).

[2] Anna Guy, Amplifying Voices of Inmates with Disabilities Prison Project, *Locked Up and Locked Down: Segregation of Inmates with Mental Illness* 12 – 15 (2016), available at http://avidprisonproject.org. (last accessed May 30, 2018).

PAUKERT & TROPPMANN, PLLC
Attorneys At Law
522 W. Riverside, Suite 560
Spokane, WA 99201
Telephone (509) 232-7760

United Nations Special Rapporteur on Torture.[3]

4.4    Even in adults without mental illness or other vulnerabilities, "negative health effects can occur after only a few days in solitary confinement, and the health risks rise with each additional day spent in such conditions."[4] "Research further shows that solitary confinement appears to cause 'psychotic disturbances,' a syndrome that has been described as "prison psychoses". Symptoms can include anxiety, depression, anger, cognitive disturbances, perceptual distortions, paranoia and psychosis and self-harm. [5]

4.5    The United Nations report continues:

> Some individuals experience discrete symptoms while others experience a 'severe exacerbation of a previously existing mental condition or the appearance of a mental illness where none had been observed before". Still, a significant number of individuals will experience serious health problems regardless of the specific conditions, regardless of time and place, and regardless of pre-existing personal factors.[6]

4.6    The tortuous and devastating effects of solitary confinement are even more severe when imposed upon people with mental illness or other disabilities. The American Psychiatric Association approved in 2012, and retained in 2017, its *Position*

---

[3] Juan Méndez, Interim Report of the Special Rapporteur of the Human Rights Council on torture and other cruel, inhuman or degrading treatment or punishment, at 19-21, U.N. Doc. A/66/268 (Aug. 5, 2011), available at https://documents-dds-ny.un.org/doc/UNDOC/GEN/N11/445/70/PDF/N1144570.pdf?OpenElement (last accessed May 30, 2018).

[4] *Id.,* p. 17, ¶ 62.

[5] *Id.,* p. 18, ¶ 62.

[6] *Id.,* p. 18, ¶ 63.

SECOND AMENDED COMPLAINT • NO. 2:18-CV-178 • Page 7

*Statement on Segregation of Prisoners with Mental Illness,* stating: "Prolonged segregation of adult inmates with serious mental illness, with rare exceptions, should be avoided due to the potential for harm to such inmates."[7]

4.7    Even more directly, the United Nations Standard Minimum Rules for the Treatment of Prisoners (the Mandela Rules) state that "solitary confinement should be prohibited in the case of prisoners with mental or physical disabilities when their conditions would be exacerbated by such measures."[8]

4.8    For these reasons and many others, the National Commission on Correctional Health Care ("NCCHC"), one of the foremost authorities on health care in jails, forcefully opposes the imposition of isolation and solitary confinement on all prisoners, and especially on people with mental illness.   Included in its Position Statement are the following unambiguous principles:

a.    Prolonged (greater than 15 consecutive days) solitary confinement is cruel, inhumane, and degrading treatment, and harmful to an individual's health.

b.    Juveniles, mentally ill individuals, and pregnant women should be excluded from solitary confinement of any duration.

---

[7] Available at
http://www.dhcs.ca.gov/services/MH/Documents/2013_04_AC_06c_APA_ps2012_PrizSeg.pdf (last accessed June 6, 2018).
[8] Available at
http://www.unodc.org/documents/commissions/CCPCJ/CCPCJ_Sessions/CCPCJ_24/resolutions/L6_Rev1/ECN152015_L6Rev1_e_V1503585.pdf (Rule 45) (last accessed June 6, 2018).

**PAUKERT & TROPPMANN, PLLC**
Attorneys At Law
522 W. Riverside, Suite 560
Spokane, WA 99201
Telephone (509) 232-7760

c.      Correctional health professionals should not condone or participate in cruel, inhumane, or degrading treatment of adults or juveniles in custody.

d.      Prolonged solitary confinement should be eliminated as a means of punishment.

e.      Solitary confinement, as an administrative method of maintaining security, should be used only as an exceptional measure when other, less restrictive options are not available, and then for the shortest time possible. Solitary confinement should never exceed 15 days. In those rare cases where longer isolation is required to protect the safety of staff and/or other inmates, more humane conditions of confinement need to be utilized.[9]

4.9    With virtually every medical, psychological, and mental health organization speaking in unison to condemn and encourage the prohibition of solitary confinement of person with mental illness, numerous federal courts have found the solitary confinement of the mentally ill to be unconstitutional. *See, e.g. Madrid v. Gomez,* 889 F. Supp. 1146, 1265-66 (N.D. Cal. 1995).

**B.      Defendants Have an Official Policy and Practice of Subjecting Inmates to Solitary Confinement Based Solely on Their Disability.**

4.10    Site visits and investigations of the CCRJC by monitoring group Disability

---

[9] National Commission on Correctional Health Care, *Solitary Confinement*, April 10, 2016, available at https://www.ncchc.org/solitary-confinement (last accessed June 6, 2018).

SECOND AMENDED COMPLAINT • NO. 2:18-CV-178 • Page 9

PAUKERT & TROPPMANN, PLLC
Attorneys At Law
522 W. Riverside, Suite 560
Spokane, WA 99201
Telephone (509) 232-7760

Rights Washington has revealed that inmates with mental illness or other disabilities seem to generally be housed in segregation. *See* Exhibit A: *Cruel But Not Unusual, Solitary Confinement in Washington's County Jails* (2016).

4.11    This general practice of housing inmates with disabilities in segregation is implemented pursuant to CCRJC's inmate classification policy that provides that solitary confinement will be imposed upon inmates "who require segregation because of such medical conditions as communicable diseases, or such mental conditions necessitating segregation from general population (danger to self or others)."

4.12    The CCRJC Inmate Handbook provides: "You will be interviewed and classified based upon your behavior, current charge and past criminal history. You will be assigned a custody level, dressed in a corresponding colored uniform and given a housing assignment to be determined by the Objective Jail Classification deputies. Your custody level is subject to review every 60 days, and may go up or down based on your behavior and any changes in charges."

4.13    The CCRJC Inmate Handbook further provides: "Inmates who require special housing to ensure their safety, the security of the facility or the safety of other inmates in general population will be housed in Administrative Segregation. This is a level of custody into which an inmate may be classified as a result of staff determination that the inmate presents a substantial risk to the security or order of the institution or

**PAUKERT & TROPPMANN, PLLC**
Attorneys At Law
522 W. Riverside, Suite 560
Spokane, WA 99201
Telephone (509) 232-7760

safety of the inmate or others. Inmates in this category require separation from the general population and strict supervision in a highly structured, controlled setting. Inmates who break the rules of the facility, are infracted, found or plead guilty will be placed in Disciplinary Segregation."

4.14    Thus, Defendants impose solitary confinement conditions upon inmates with disabilities that are substantially equivalent to the conditions imposed upon other inmates as punishment.

### C.    Defendants Fail to Provide Adequate Medical and Mental Health Care

4.15    Defendants fail to provide adequate medical care to inmates, to include poor treatment and management of Plaintiff's diabetes.

4.16    There is no designated mental health treatment unit at CCRJC. It employs a Mental Health Manager and some cursory mental health monitoring and screening but does not provide full mental health counseling and psychiatric treatment with medication management.

4.17    Due to the lack of general mental health screening and treatment by qualified staff, Defendants use solitary confinement and suicide watch as a substitute for mental health services, even if the mentally ill inmate does not express suicidal ideation or threats of self-harm.

4.18    Defendants fail to provide adequate psychiatric treatment of mental health

PAUKERT & TROPPMANN, PLLC
Attorneys At Law
522 W. Riverside, Suite 560
Spokane, WA 99201
Telephone (509) 232-7760

disorders, to include psychiatric care and medication management. Treatment is provided by people who are not doctors and are not qualified to do a full psychiatric assessment and prescribe appropriate medications. Defendant Carlson reviewed Plaintiff Stuller's condition and status and noted his psychotic symptoms but did not provide a plan to treat and resolve the symptoms.

4.19    Defendants refuse to provide mental health counseling to inmates until twenty-eight days prior to their release date. If a patient lacks a release date, as was the case with Mr. Stuller, no counseling is provided. Mr. Stuller's parents were forced to hire an outside mental health provider to visit Mr. Stuller in the jail on a weekly basis in order for him to receive any counseling at all. Inmates who lack these resources or supports do not receive this level of treatment.

4.20    Defendants' failure to adequately screen for mental health conditions violates well-established national standards, including those published by the NCCHC.

4.21    NCCHC's 2014 publication of "Standards for Health Services in Jails" require jails to inquire during the receiving screening into "[p]ast or current mental illness, including hospitalizations," as well as any "[h]istory of or current suicidal ideation." *See* NCCHC Standard J-E-02, p. 71 (2014) (Receiving Screening). These inquiries are designed "to ensure that patients with known illnesses and those on medications are identified for further assessment and continued treatment." *See id.*

PAUKERT & TROPPMANN, PLLC
Attorneys At Law
522 W. Riverside, Suite 560
Spokane, WA 99201
Telephone (509) 232-7760

4.22    Additionally, NCCHC standards require jails to provide a more comprehensive mental health screening *for all inmates* within 14 days of admission, including inquiries into psychiatric hospitalization, suicidal behavior and ideation, and psychotropic medications, with further referral for evaluation and treatment for individuals with positive mental illness screens. *See* NCCHC Standard J-E-05 (Mental Health Screening and Evaluation).

4.23    This process includes compiling medical records from community mental health providers to create a complete mental health history and is designed to identify people with mental illness "soon after admission to prevent deterioration of their level of functioning and to [ensure that they] receive necessary treatment in a timely fashion." *See* NCCHC Standard J-E-04 (Initial Health Assessment), J-E-05.

4.24    Defying national standards, Defendants use solitary confinement as a substitute for providing actual mental health treatment services.

4.25    As a result, inmates can and do remain untreated, floridly psychotic, or otherwise symptomatic for the entire length of their incarceration, lasting months or even years, causing immeasurable pain and suffering and risking permanent injury and death.

**D.    Plaintiff Suffered Injury as a Result of Defendants' Actions**

4.26    Josh Stuller is a person with a mental illness. He was booked into the CCRJC on October 11, 2015, due to conduct caused by a mental illness, after his family

discovered delusional, paranoid, and arguably threatening writings in his bedroom. He would eventually be acquitted on all criminal charges with a finding of Not Guilty by Reason of Insanity.

4.27   Shortly after his arrival at CCRJC, Mental Health Manager Leslie Carlson met with Mr. Stuller. She recorded that he reported suffering from schizophrenia, depression, and anxiety and that he had been without his anti-psychotic medications for twenty-four hours.

4.28   Ms. Carlson further noted that Mr. Stuller stated that he was not suicidal or homicidal. Despite this, she stated that "it would be wise to keep him in a holding cell until we can detox and stabalize [sic] him and monitor him."

4.29   Consistent with Chelan County's standard pattern, practices, and policies, Mr. Stuller was then placed in solitary confinement and isolated, with almost no substantial contact with other persons. This occurred not because Mr. Stuller had violated rules that warranted punishment, posed a danger to himself or others, or was at risk of harm from other inmates. There is no indication that Plaintiff Stuller needed to be segregated from the general population. In fact, he stated in his first encounter with Ms. Carlson that he was not suicidal or homicidal.

4.30   Rather, he was placed in solitary confinement for the explicit reason that he suffered from a disability—with the likely result that his condition would be worsened

PAUKERT & TROPPMANN, PLLC
Attorneys At Law
522 W. Riverside, Suite 560
Spokane, WA 99201
Telephone (509) 232-7760

by such confinement.

4.31    Because Mr. Stuller did not have a release date assigned upon admission, Defendants did not provide him with any mental health counseling. His parents hired a private mental health provider to visit him once a week for 30-60 minutes.

4.32    When Mr. Stuller was permitted to visit with his counselor or other visitors, he was regularly required to remain in a locked cage or in a room with a divider between him and his visitor, preventing actual human contact.

4.33    For four months, Mr. Stuller was not even provided basic hygiene like haircuts or the ability to shave.

4.34    Mr. Stuller remained in solitary confinement until he was eventually released from CCRJC thirteen months later, on November 1, 2016.

4.35    Solitary confinement caused Mr. Stuller severe mental anguish and suffering and exacerbated his mental health symptoms. Throughout Mr. Stuller's thirteen-month stay at CCRJC, Ms. Carlson and others documented his very poor and worsening mental condition, to include auditory hallucinations that were eventually joined by visual hallucinations as the months passed.

4.36    Defendants observed and were well aware of the suffering caused by unnecessary and unwarranted isolation but minimized it as simple boredom. For instance, On November 17, 2015, Ms. Carlson noted that "he is doing fine/just tired of

PAUKERT & TROPPMANN, PLLC
Attorneys At Law
522 W. Riverside, Suite 560
Spokane, WA 99201
Telephone (509) 232-7760

being cooped up all day" and on December 16, 2015, noted that "other than being bored and cooped up he is doing pretty well."

4.37    Rather than respond appropriately and legally to Mr. Stuller's medical condition and disability, Defendants isolated him further. He was denied visits from his family (one of the rare times he had any social interaction with anyone) a total of forty-eight times, for reasons such as a malfunctioning elevator, the local Apple Blossom Festival, being understaffed, or for no reason at all.

4.38    Defendants failed to adequately treat Mr. Stuller's symptoms with medication and/or therapy. For example, defendants gave an injected medication which temporarily lessened but failed to eliminate his symptoms. Defendants did not try different medications to adequately treat his symptoms. In March of 2016, the jail ran out of the partially effective injected medication but did not provide an alternative medication, instead choosing to leave Mr. Stuller unmedicated and allowing his hallucinations to return unchecked. On March 22, 2016, Ms. Carlson noted that Plaintiff Stuller had visual and auditory hallucinations: "big hairy spiders and cockroaches are what he sees . . . the voices are louder and meaner now causing him more anxiety."

4.39    On May 11, 2016, Plaintiff Stuller was moved to a new isolation room, where he remained until his release on November 1, 2016.

4.40    Upon his release from CCRJC, Plaintiff Stuller entered court-ordered

PAUKERT & TROPPMANN, PLLC
Attorneys At Law
522 W. Riverside, Suite 560
Spokane, WA 99201
Telephone (509) 232-7760

inpatient treatment at Eastern State Hospital. Proving that Mr. Stuller's condition could have been treated at CCRJC, he promptly responded to appropriate treatment at the hospital, experienced full remission of his symptoms, and was successfully released into the community well in advance of his final commitment date. Mr. Stuller's thirteen-month ordeal of isolation was completely unnecessary and preventable.

4.41   The lack of mental health treatment and deleterious solitary confinement conditions caused Plaintiff Stuller to suffer from unabated and worsening symptoms of his mental illness, which were not relieved until he was released from CCRJC and received treatment at Eastern State Hospital.

4.42   Defendants also caused Plaintiff Stuller severe emotional and psychological damage and distress throughout his imprisonment, as well as similar damage and distress that is ongoing and possibly permanent.

## V.   CAUSES OF ACTION

## COUNT ONE

## Violation of The Eighth Amendment to The U.S. Constitution (42 U.S.C. § 1983)

6.1   Defendants' placement of Plaintiff and other inmates in indefinite solitary confinement due to their disability is the policy, practice and custom of CCJRC.

6.2   Defendants' placement of Plaintiff and other inmates in indefinite solitary confinement due to their disability is done under color of state law.

SECOND AMENDED COMPLAINT • NO. 2:18-CV-178
• Page 17

PAUKERT & TROPPMANN, PLLC
Attorneys At Law
522 W. Riverside, Suite 560
Spokane, WA 99201
Telephone (509) 232-7760

6.3    By placing and retaining Plaintiff and other inmates with disabilities in solitary confinement, Defendants deprived Plaintiff and continue to deprive other inmates of basic human needs, including but not limited to routine social interaction, environmental and sensory stimulation, regular physical exercise, sleep and other essential activities.

6.4    By placing and retaining Plaintiff and other with disabilities inmates in solitary confinement, Defendants created an unreasonable risk of serious harm to the psychological and physical health and safety of Plaintiff and other inmates and in fact caused psychological and physical harm to Plaintiff and other inmates.

6.5    By placing and retaining Plaintiff and other inmates with disabilities in solitary confinement, Defendants have acted, and continue to act, with deliberate indifference to the psychological and physical harm that such confinement threatens to inflict, has inflicted, and currently inflicts, on Plaintiff and other inmates.

6.6    Defendants' policy, practice and custom of solitary confinement for people with disabilities, together with Defendants' deliberate indifference to the significant psychological and physical harm that their policy has inflicted and currently inflicts on Plaintiff Stuller and other inmates, violates the prohibition on cruel and unusual punishment guaranteed by the Eighth and Fourteenth Amendments to the Constitution.

WHEREFORE, Plaintiff requests relief as outlined below.

PAUKERT & TROPPMANN, PLLC
Attorneys At Law
522 W. Riverside, Suite 560
Spokane, WA 99201
Telephone (509) 232-7760

# COUNT TWO

## Violation of The Fourteenth Amendment to The U.S. Constitution
## (42 U.S.C. § 1983)

6.7    Defendants' placement of Plaintiff Stuller and other inmates in indefinite solitary confinement due to their disabilities is the policy, practice and custom of CCJRC.

6.8    Defendants' placement of Plaintiff Stuller and other inmates in solitary confinement due to their disabilities is done under color of state law.

6.9    When compared to the conditions of confinement for CCRJC inmates who are not disabled, the conditions experienced by disabled inmates such as Plaintiff Stuller are atypical and significantly more severe.

6.10    Defendants did not afford Plaintiff Stuller and other inmates with disabilities a reasonable opportunity to exit solitary confinement, such as periodic administrative review of their classification coupled with treatment designed to establish their fitness to live in less restrictive housing.

6.11    Inmates in Administrative or Disciplinary Segregation at CCRJC who are not disabled have opportunities per CCRJC policy to have their housing classification reviewed and improved.

6.12    Because Defendants follow policies, practices and customs of imposing an atypical and significant hardship on disabled inmates such as Plaintiff Stuller, and

SECOND AMENDED COMPLAINT • NO. 2:18-CV-178
• Page 19

because Defendants denied Plaintiff Stuller and continue to deny other inmates with disabilities the opportunities that other inmates have for review and improvement of their restrictive housing, Defendants have deprived Plaintiff Stuller and continue to deprive other inmates with disabilities of a protected liberty interest without due process of law, in violation of the Fourteenth Amendment to the United States Constitution.

WHEREFORE, Plaintiff requests relief as outlined below.

## COUNT THREE

### Violation of The Americans with Disabilities Act (42 U.S.C. § 12132 et seq.)

6.13    Under the Americans with Disabilities Act, "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132.

6.14    Defendant Chelan County is a public entity as defined in 42 U.S.C. §12131(1)(A).

6.15    Plaintiff and other inmates are qualified individuals with a disability, as that term is defined in 42 U.S.C. §12102(2). They all suffer from an impairment that substantially limits one or more "major life activities," including, *inter alia,* caring for oneself, eating, sleeping, speaking, learning, reading, concentrating, thinking, communicating, and working. *See* 42 U.S.C. §12102(2)(A).

**PAUKERT & TROPPMANN, PLLC**
Attorneys At Law
522 W. Riverside, Suite 560
Spokane, WA 99201
Telephone (509) 232-7760

6.16   The programs, services, and activities that Defendants provide to individuals incarcerated at CCRJC include, *inter alia*, mail and telephone services, in-person visitation, hygiene activities, outdoor exercise, administrative, disciplinary, and classification proceedings, the "kite" and grievance systems, library services, access to reading materials, commissary services, and educational, vocational, religious, recreational, and other programming.

6.17   Defendants discriminate against, unjustly segregate, and fail to make reasonable modifications to policies, practices, and procedures for Plaintiff Stuller and other inmates with disabilities. As a result, Plaintiff Stuller and other inmates with disabilities were or are excluded from participation in and denied the benefits of CCRJC's services, programs, and activities by their housing in solitary confinement solely on the basis of their disability.

WHEREFORE, Plaintiff requests relief as outlined below.

## COUNT FOUR

### Violation of the Rehabilitation Act (29 U.S.C. § 794)

6.18   Under Section 504 of the Rehabilitation Act, "[n]o otherwise qualified individual with a disability in the United States . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected

PAUKERT & TROPPMANN, PLLC
Attorneys At Law
522 W. Riverside, Suite 560
Spokane, WA 99201
Telephone (509) 232-7760

to discrimination under any program or activity receiving Federal financial assistance." *See* 29 U.S.C. § 794(a).

6.19    At all relevant times, Defendant Chelan County received Federal financial assistance as that term is used in 29 U.S.C. § 794, including receiving funding under the U.S. Department of Justice's State Criminal Alien Assistance Program (SCRAAP).

6.20    All of the operations of Defendant Chelan County qualify as "programs or activities," as those terms are defined in 29 U.S.C. § 794(b). This includes all operations of CCRJC.

6.21    Plaintiff and other inmates with disabilities are qualified individuals with disabilities as that term is defined in 29 U.S.C. § 705(20) and 42 U.S.C. § 12102.

6.22    By its policies, practices, and procedures, Defendant Chelan County violated the rights of Plaintiff Stuller and continues to violate the rights of other inmates with disabilities under the Rehabilitation Act by discriminating against them, excluding them from, and denying them the benefits of the operations of the Chelan County Jail.

WHEREFORE, Plaintiff Stuller requests relief as outlined below.

## VI.   PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests that this Court:

A.    Issue judgment in favor of Plaintiff Stuller and against Defendants;

B.    Issue a declaratory judgment that the conduct, conditions, and treatment

PAUKERT & TROPPMANN, PLLC
Attorneys At Law
522 W. Riverside, Suite 560
Spokane, WA 99201
Telephone (509) 232-7760

described in this Complaint violate the constitutional and statutory rights of Plaintiff and other inmates with disabilities in the manner identified in this Complaint.

C.    Issue a permanent injunction restraining Defendants from violating the Eighth and Fourteenth Amendments, the Rehabilitation Act, and the Americans with Disabilities Act in the housing and provision of care in the CCRJC.

D.    Issue an order retaining jurisdiction over this case to ensure Defendants' full compliance with the foregoing injunction;

E.    Award all legally recoverable damages to Plaintiff Stuller in an amount to be shown at trial.

F.    Issue an award for Plaintiff's costs, litigation expenses, and reasonable attorney's fees pursuant to 42 U.S.C. § 1988 and 42 U.S.C. § 12205.

G.    Such other and further relief as this Court may deem just and equitable.

DATED April 19, 2019.

**PAUKERT & TROPPMANN, PLLC**

By */s/ Andrew S. Biviano, WSBA #38086*
ANDREW S. BIVIANO, WSBA #38086
Email: abiviano@pt-law.com
BREEAN L. BEGGS, WSBA #20795
Email: bbeggs@pt-law.com
MARY ELIZABETH DILLON, WSBA #50727
Email: bdillon@pt-law.com
522 W. Riverside Avenue, Suite 560
Spokane, Washington 99201
Telephone: (509) 232-7760
Fax: (509) 232-7762

SECOND AMENDED COMPLAINT • NO. 2:18-CV-178
• Page 23

**PAUKERT & TROPPMANN, PLLC**
Attorneys At Law
522 W. Riverside, Suite 560
Spokane, WA 99201
Telephone (509) 232-7760

**TERRELL MARSHALL LAW GROUP, PLLC**

TOBY J. MARSHALL, WSBA #32726
Email: tmarshall@terrellmarshall.com
936 North 34th Street, Suite 300
Seattle, Washington 98103
Telephone: (206) 816-6603
Fax: (206) 319-5450

*Attorneys for Plaintiff*

PAUKERT & TROPPMANN, PLLC
Attorneys At Law
522 W. Riverside, Suite 560
Spokane, WA 99201
Telephone (509) 232-7760

1

## <u>CERTIFICATE OF SERVICE</u>

2

3

4          I hereby certify that on the 19th day of April, 2019, I electronically filed

5  and served a copy of this document using the CM/ECF filing system which will send

6  notification of such filing to the following:

7

8

9      Andrew S. Biviano              abiviano@pt-law.com;
                                       hhoffman@pt-law.com
10

11     Breean L. Beggs                bbeggs@pt-law.com

12     Mary Elizabeth Dillon          bdillon@pt-law.com

13     Patrick McMahon                patm@carlson-mcmahon.org;
                                       FrancescaN@carlson-mcmahon.org
14

15     David L. Force                 davidf@carlson-mcmahon.org

16     Toby J. Marshall               tmarshall@terrellmarshall.com

17

18     I declare under penalty of perjury under the laws of the United States of America
   that the foregoing is true and correct.
19

20

21                                     */s/ Andrew S. Biviano*
                                       Andrew S. Biviano
22

23

24

25

SECOND AMENDED COMPLAINT • NO. 2:18-CV-178
• Page 25

PAUKERT & TROPPMANN, PLLC
Attorneys At Law
522 W. Riverside, Suite 560
Spokane, WA 99201
Telephone (509) 232-7760